Larry Zerner (SBN 155473)
Law Offices of Larry Zerner
1801 Century Park East, Ste. 2400
Los Angeles, CA 90067
(310) 773-3623
Email: Larry@ZernerLaw.com

Attorney for Plaintiff Phoenix Entertainment
Partners, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHOENIX ENTERTAINMENT PARTNERS, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> MOREL SAND, LLC, a California Limited Liability Company; LOCAL MOTION OC, LLC, a California Limited Liability Company; AND LIVING S & G, INC., a California Corporation, and DOES 1-10, Inclusive, <br><br> Defendants. | Case No.: CV 16- cv-7488 <br><br> COMPLAINT <br><br> REQUEST FOR JURY TRIAL (F.R.C.P. Rule 38) |

Complaint

The Plaintiff, Phoenix Entertainment Partners, LLC ("Phoenix"), by its counsel, complains of the Defendants Morel Sand, LLC ("Morel" or "Defendant"), Local Motion OC, LLC ("Local" or "Defendant") and Living S & G, Inc. ("Living" or "Defendant) (individually and collectively "Defendants") and for its Complaint hereby alleges as follows:

## JURISDICTION AND VENUE

1.    This is an action for trademark infringement in which the Defendants stand accused of supplying customers and patrons with karaoke accompaniment tracks marked with Phoenix's federally registered trademarks and providing karaoke entertainment services in connection with Phoenix's federally registered trademarks; all without authorization.

2.    This action arises under §§ 32 and 43 of the Trademark Act of 1946, 15 U.S.C. §§ 1114 and 1125, as amended, as to the trademark infringement and unfair competition claims.  This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United States.

3.    This Court further has jurisdiction pursuant to 28 U.S.C § 1338(a), in that this civil action arises under acts of Congress relating to trademarks, and, as to the Plaintiff's federal unfair competition claim, pursuant to 28 U.S.C. § 1338(b), in that the claim is joined with a substantial and related claim under the trademark laws of the United States.

4.    This Court has supplemental jurisdiction over the subject matter of Phoenix's state law claims pursuant to 28 U.S.C. § 1367(a), in that the claim is so related to Phoenix's federal claims that they form part of the same case or controversy.

5.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), because all of the Defendants operate  in this State and judicial district.

6.     This Court has personal jurisdiction over each of the Defendants, in that all of the Defendants conduct significant business here, and in that the acts of which the Defendants stand accused were undertaken in this State and judicial district.

### THE PLAINTIFF

7.     Plaintiff Phoenix is a North Carolina LLC having its principal place of business in Pineville, North Carolina.

### THE DEFENDANTS

8.     Defendant Morel Sand, LLC is a California limited liability company that operates an eating and drinking establishment under the trade name New Wave Restaurant in Bellflower, CA, at which karaoke entertainment is provided.

9.     Defendant Local Motion OC, LLC is a California limited liability company that operates an eating and drinking establishment under the trade name 80's Bar & Grille in Fullerton, CA, at which karaoke entertainment is provided.

10.   Defendant Living S & G, Inc. is a California corporation that operates a drinking establishment and  nightclub under the trade name That 80's Bar in Montclair, CA, at which karaoke entertainment is provided.

11.   Plaintiff is informed and believes, and on that basis alleges, that various persons and entities, whose names are presently unknown to Plaintiff, participated in and are liable for the wrongful acts set forth herein.  Plaintiff will seek leave of Court to amend the Complaint to add such persons and entities as Defendants and to allege the exact nature of their wrongful conduct when such information has been ascertained.

12.    Plaintiff is informed and believes, and on that basis  allege, that in connection with the acts set forth herein, each of the Defendants acted willingly, intentionally, and knowingly, both for himself, herself, or itself, and in concert with each other defendant, and as an agent for each other defendant, and was at all

Complaint

times acting within the course and scope of such agency, with the consent, authorization and/or ratification of each other defendant, and in furtherance of a common scheme to infringe the copyrights, and other valuable rights of Plaintiff.

## BACKGROUND FACTS

13.    Karaoke is a popular form of participatory entertainment commonly found in bars and restaurants and other types of venues throughout the United States.

14.    The basic premise of a karaoke show is that the venue hosting the show provides patrons with access to a sound system and specially prepared karaoke accompaniment tracks, so that individual patrons may perform for the crowd.

15.    Generally, a "karaoke accompaniment track" is an audiovisual work comprising a re-recorded version of a popular song without the lead vocals synchronized to a graphical component containing a lyric display, cueing information, and other information.

16.    When a karaoke accompaniment track is publicly performed, the graphical component is displayed to the patron who is performing and may be displayed to the crowd as well.

17.    Venues that offer karaoke entertainment, including the Defendants, do so as part of a commercial transaction wherein the venues supply their patrons with access to karaoke tracks and karaoke entertainment services in exchange for their patronage of the establishment and, they hope and expect, the purchase of food and beverages.

18.    The purchase and consumption of alcoholic beverages in connection with karaoke shows is particularly encouraged to enable patrons to overcome inhibitions against singing in public.

Complaint

19.   Most venues that offer karaoke entertainment hire mobile entertainment operators to provide the karaoke tracks and the karaoke entertainment services on the venues' behalf.

20.   Phoenix is the owner of SOUND CHOICE, a well-known and leading brand of karaoke accompaniment tracks that is particularly well known to commercial karaoke operations including bars, restaurants, and other venues as described above.

21.   Over the course of nearly three decades in business, Slep-Tone Entertainment Corporation ("Slep-Tone"), Phoenix's predecessor in interest, re-recorded and released in excess of 16,500 SOUND CHOICE-branded popular songs on special compact discs known as CD+G ("compact disc plus graphics") discs and, more recently, a subset of that catalog in another common karaoke format, MP3+G ("MP3 plus graphics") on compact discs.

22.   SOUND CHOICE-branded karaoke tracks are wildly popular among karaoke entertainment providers, patrons, and home consumers.  According to some estimates, as corroborated by investigative data, more than half of all accompaniment tracks played at karaoke shows in the United States originated from Slep-Tone's recordings.

23.   The popularity of SOUND CHOICE karaoke tracks derives from the market's perception that the recordings are usually the most faithful to the sound of the original recording artist, a characteristic highly valued by karaoke singers.

24.   SOUND CHOICE karaoke tracks are also perceived by the market as providing highly accurate singing cues as part of the video display, a characteristic that is also highly valued by karaoke singers.

25.   Slep-Tone and its successor Phoenix have released their karaoke tracks for commercial users <u>only</u> on compact discs[1] and not on any other form of carrier (such as computer hard drives or through internet downloads).

26.   Over time, however, it has become technologically possible to create karaoke accompaniment tracks, using the SOUND CHOICE CD-based tracks as a template, for storage on alternative media, such as computer hard drives.

27.   In most cases, the creation of such non-original tracks results in an imitation of a SOUND CHOICE track, which imitation is degraded from and inferior to the original because of digital compression of the data as the format is converted from native CD+G audio and graphics to compressed audio and graphics.

28.   The process outlined above is known as "media-shifting," because the information is being copied or shifted from one medium to another, and "format-shifting," because the information is being modified from one format to another for use on a different medium.

29.   These media-shifting and format-shifting activities involve a reduction in the quality of the audiovisual works, because the formats used require the use of compressed audio in the resulting tracks.

30.   These media-shifting and format-shifting activities also usually result in the placement of the SOUND CHOICE brand upon the resulting non-original new tracks.

_____

[1] In the beginning, Slep-Tone released its karaoke tracks on cassette tapes as well, but that technology was focused on the home consumer and has since become fully obsolete.

Complaint

31.   Easy electronic duplication of media-shifted tracks has resulted in the widespread copying of SOUND CHOICE-branded   karaoke tracks unaccompanied by the acquisition of any discs at all.

32.   This copying allows karaoke accompaniment track users to gain the benefit of using SOUND CHOICE-branded tracks without paying for original discs.

33.   Karaoke accompaniment track users have used the available technology to place the duplicated contents of one purchased disc on two or more computer systems for simultaneous use; to place the duplicated contents of their patrons' discs on their own computer hard drives at a show; to "swap" song files with other users; to obtain and share karaoke tracks via file-sharing sites and torrents; to purchase computer hard drives that were pre-loaded with duplicates of karaoke tracks; and to sell any original media they might have owned in the secondary market once they have media-shifted.

34.   To the extent that the Defendants have undertaken any of the activities described in the preceding paragraph, those activities have been undertaken wholly without any form of permission or payment to Phoenix.

## THE RIGHTS OF THE PLAINTIFF

35.   Phoenix is the owner of the federal and state trademark and service mark registrations listed in Annex A and Annex B hereto ("the Sound Choice Marks"), by virtue of an assignment instrument from Slep-Tone dated February 15, 2015.

36.   Slep-Tone acquired its rights in the Sound Choice Marks by virtue of its registrations based on the use of the marks (a) by applying the Sound Choice Marks to goods, which goods were then transported in interstate commerce, and (b) in connection with the advertising and performance of karaoke entertainment services, either directly or by related companies that include hundreds of controlled

Complaint

licensees.

37.    Phoenix is also the sole owner of Sound Choice Entertainment, LLC, a Texas limited liability company ("SCE") that is engaged in the business of providing karaoke entertainment services to venues in various locations around the United States.

38.    Phoenix and its predecessor have, for the entire time the Sound Choice Marks have been federally registered, provided the public, including the Defendants, with notice of those federal registrations through the consistent application of the symbol ® to its marks on goods and in connection with services, when appropriate.

39.    Principally, the Sound Choice Marks are indicators of Phoenix as the origin of physical karaoke accompaniment tracks that have been marked with the Sound Choice Marks and of karaoke entertainment services provided in connection with the Sound Choice Marks.

## THE ACTIVITIES OF THE DEFENDANTS

### A. Defendants Morel, Local and Living

40.    Defendants each host karaoke shows comprising karaoke entertainment services at their respective establishments.

41.    At these karaoke shows, the Defendants supply karaoke accompaniment tracks to their patrons themselves or by contracting with a third party operator as their agent for doing so.

42.    When contracting with a third party agent, the Defendants each induce their respective third-party agent to transport the karaoke accompaniment tracks to the venue.

43.    A substantial number—the exact number of which will be ascertained through discovery—of the karaoke accompaniment tracks the Defendants supply to

their patrons are marked with the Sound Choice Marks and are specifically identified in the computer system that contains them, by name or other symbol, as SOUND CHOICE tracks.

44.   The physical tracks so marked and so supplied were not made by Phoenix or under its direction or control.

45.   Because of the frequent, repeated display of the Sound Choice Marks across numerous instances of widely disparate songs, patrons who receive each of the Defendants' karaoke entertainment services are likely to view the display of the Sound Choice Marks as an indicator of the affiliation, connection, or association of that Defendant with Phoenix, or of Phoenix's sponsorship or approval of the services and related commercial activities, rather than merely as indicating Phoenix as the creator of the underlying communicative content of any particular song being performed.

46.   The Defendants did not have Phoenix's permission to mark any karaoke accompaniment tracks with the Sound Choice Marks; to make any karaoke accompaniment tracks marked with the Sound Choice Marks; or to induce, authorize, or otherwise arrange for any third party to do so.

47.   At the karaoke shows, the karaoke accompaniment tracks supplied to the Defendants' patrons are played upon the patrons' requests, so that the patrons may sing along for entertainment purposes.

48.   The karaoke accompaniment tracks that the Defendants supplied to their patrons and that were marked with the Sound Choice Marks were and are counterfeit.

49.   As the patrons are supplied with karaoke entertainment services, the Sound Choice Marks are repeatedly displayed in connection with the services.

50.   Because of the well-known association of the Sound Choice Marks with karaoke entertainment services, the display of the Sound Choice Marks in

connection with the services, regardless of the particular song being played, acts as a general advertisement for the services as well as an indicator of the quality of the services being provided.

51.   The foregoing activities undertaken in connection with the Sound Choice Marks were undertaken in derogation of Phoenix's rights in the Sound Choice Marks.

52.   The Defendants' patrons are likely to be confused regarding the origin or sponsorship of the goods being supplied and regarding the affiliation or connection of that Defendant with Phoenix, based on their mistaken belief that the goods being supplied were made by Phoenix and that the services being provided are provided with Phoenix's knowledge and approval.

53.   As a result of those activities, Phoenix has been damaged through the loss of revenues associated with the sale or licensing of legitimate goods and services, as well as through the loss of Phoenix's ability to control the quality of goods marked and services provided in connection with the Sound Choice Marks.

54.   The supplying of the tracks and the provision of the services are an essential part of a commercial transaction wherein the patrons purchase food and beverages and receive access to the tracks and to the services in connection with their patronage, even if the patrons do not directly pay for access to the tracks or the services.

55.   When the karaoke shows are ongoing, the shows are generally the principal entertainment focus of each Defendant's establishment.

56.   The Defendants derive value from the karaoke shows in the form of increased patronage and increased sales of food and beverages.

57.   Upon information and belief, each of the Defendants has advertised the availability of karaoke shows on its premises, via its own advertising apparatus and as an activity attributable to its business, rather than as adjunct or auxiliary to

Complaint

their businesses.

58.  In order to obtain the infringing karaoke tracks or to supply them at their respective establishments for use by the patrons, the Defendants induce the transportation of the infringing karaoke tracks in commerce, using computer networks and/or public roadways.

59.  Each of the Defendants has had actual knowledge of the foregoing activities being undertaken at its establishment.

60.  Specifically, each of the Defendants was notified by Phoenix by a letter – dated March 14, 2016 and March 17, 2016 for Defendants Morel and Living, and dated November 28, 2015 for Defendant Local – of the unlicensed, infringing character of the karaoke entertainment services being provided in their establishments.

61.  In these letters, each of the Defendants was offered information about licensing and compliance programs that Phoenix offers to venues that feature karaoke entertainment, along with the opportunity to bring their karaoke entertainment services into compliance with the law and with Phoenix's policies regarding the use of its intellectual property.

62.  In particular, each of the Defendants was offered the opportunity, at no charge, to request, via Phoenix's Safe Harbor program, that Phoenix evaluate the licensing status and needs of its karaoke entertainment provider and to avoid liability as long as the venue took heed of Phoenix's evaluation and acted accordingly.

63.  None of the Defendants took advantage of the Safe Harbor program.

64.  Despite these offers, and despite their knowledge of the unlicensed, infringing character of the karaoke entertainment services being provided in their establishments, none of the Defendants elected to bring their karaoke entertainment services into compliance.

**Complaint**

65.   Each of the Defendants has the right to control the means and the details of the process by which its third-party agent(s) accomplish their respective tasks, including, without limitation, controlling the dates and starting and stopping times of shows, determining whether particular content (such as offensive-language content) is permitted to be played at shows, determining the style and genre of music played at shows, and determining whether the third-party agent is permitted to use the Defendant's equipment (such as television displays, sound equipment, stage, etc.) as part of the shows.

66.   In particular, each of the Defendants has the right to control whether or not the activities occur on its premises.

67.   Despite each of Defendants having knowledge of the infringing character of the activities and ability to control whether those activities occur, none of the Defendants have elected to stop the infringement from occurring.

68.   As such, to the extent that it is not directly liable as an infringer, each of the Defendants is liable as a secondary infringer for the continuing infringement that has occurred and is occurring on its premises.

**B. The Defendants' Pattern of Infringing Conduct**

69.   The Defendants' conduct as described above with respect to the Sound Choice Marks is not isolated to Sound Choice accompaniment tracks, but also extends as part of a large-scale program of infringing activities and piracy of numerous other producers' karaoke tracks, on the same terms.

70.   Essentially, the Defendants have built an entire business model and moneymaking scheme premised on a competitive advantage derived from the infringement of the intellectual property rights of others, including Phoenix.

71.   The Defendants' activities constitute unfair competition against Phoenix's own licensees, all of whom provide karaoke entertainment services without engaging in that infringement.

Complaint

72.   The Defendants' wrongful conduct exerts illegitimate and unfair pressure upon the market for karaoke services in this State and judicial district through the unlicensed use of pirated material belonging to Phoenix and to other producers, thereby diminishing the value of licenses and permissions in the hands of Phoenix, its subsidiary, and its licensees.

73.   The diminution of the value of licenses encourages or forces karaoke operators to forego licenses in order to compete profitably.

74.   Upon information and belief, the Defendants' misconduct has cost Phoenix in excess of $100,000 in revenue from legitimate sources crowded out of the market by their wrongful conduct.

## FIRST CLAIM FOR RELIEF
### TRADEMARK INFRINGEMENTUNDER 15 U.S.C. § 1114(1)
### AGAINST ALL DEFENDANTS

110. Phoenix repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

111. Each Defendant used a reproduction, counterfeit, or copy of the Sound Choice Marks in connection with the production of goods and with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks; by providing the Defendants' patrons with access to the goods; or by repeatedly displaying the reproduction, counterfeit, or copy of the Sound Choice Marks during the provision of those services.

112. Each Defendant's use of the Sound Choice Marks was "in commerce" within the meaning of the Trademark Act of 1946 as amended.

113. Phoenix did not license any Defendant to manufacture or acquire reproductions, counterfeits, or copies of, or to use, the Sound Choice Marks in

Complaint

connection with the provision of their services or to provide any patrons with access to goods marked with the Sound Choice Marks.

114. Each Defendant's use of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive its customers and patrons into believing that the goods to which access is provided are bona fide karaoke accompaniment tracks authorized by Phoenix, and that the services being provided are provided with the authorization of Phoenix.

115. Each Defendant's acts were willful, knowing, and intentional.

116. Each Defendant that has hired a third-party agent to supply infringing karaoke tracks and to provide karaoke entertainment services is additionally vicariously liable for the infringing acts of that agent.

117. Each Defendant's activities constitute the infringement of the federally registered Sound Choice Marks in violation of 15 U.S.C. § 1114(1).

118. Phoenix has been damaged by each Defendant's infringing activities.

119. Unless enjoined by the Court, each Defendant's infringing activities as described above will continue unabated and will continue to cause harm to Phoenix.

## SECOND CLAIM FOR RELIEF
## UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)
## AGAINST ALL DEFENDANTS

120. Phoenix repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

121. Each Defendant has supplied karaoke accompaniment tracks marked with the Sound Choice Marks to customers or patrons.

122. Each Defendant has supplied karaoke entertainment services to customers or patrons, in connection with which the Sound Choice Marks were used in the

Complaint

advertising and performance of the services and not merely as an adjunct to the playing of any particular communicative content contained within karaoke accompaniment tracks.

123. The use of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive the customers and patrons into believing, falsely, that Phoenix manufactured the karaoke accompaniment tracks being supplied or sponsored or approved Defendants' services and commercial activities.

124. The presence of the Sound Choice Marks on the goods supplied to the customers or patrons is also likely to cause confusion, or to cause mistake, or to deceive those receiving access to the goods into believing, falsely, that the goods being supplied to them were sold by Phoenix and purchased or otherwise licensed by the Defendants.

125. Because of each Defendant's wholly unauthorized uses of the Sound Choice Marks in the manner described above, Phoenix was denied revenue from the sale or licensing of authorized goods and services and deprived of control over the use of the Sound Choice Marks.

126. Because Phoenix has been denied this revenue and control, it has been damaged by each Defendants' uses.

127. Phoenix is a provider of karaoke entertainment services, directly, through controlled licensees, and through its wholly owned subsidiary SCE.

128. Each Defendant's activities are part of a program and money-making scheme premised upon the unlicensed use of pirated copies of karaoke accompaniment tracks belonging to Phoenix and other karaoke producers.

129. Each Defendant's activities in furtherance of this program of infringement have caused a competitive injury to Phoenix, both directly and on the basis of damage to Phoenix's licensees.

130. Each Defendant's activities constitute unfair competition in violation of 15

Complaint

U.S.C. § 1125(a).

131. Unless enjoined by the Court, Defendants' unfair competition activities as described above will continue unabated and will continue to cause harm to Phoenix.

### THIRD CLAIM FOR RELIEF
### CALIFORNIA DECEPTIVE TRADE PRACTICES ACT
### AGAINST ALL DEFENDANTS

132. Phoenix repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

133. Defendants used and knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks in connection with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks, and by displaying the reproduction, counterfeit, or copy of the Sound Choice Marks during the provision of those services.

134. Defendants' acts of infringement occurred during the conduct of trade or commerce, from which Defendants derived an economic benefit.

135. Defendants' acts of infringement constitute unfair or deceptive acts or practices within the meaning of California Bus. & Prof. Code §17200, et seq.

136. Defendants' acts of infringement cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by Phoenix.

137. As a direct and proximate result of each of Defendants' acts of infringement Phoenix has suffered a pecuniary loss, including the loss of revenue associated with sales compact discs to karaoke jockeys, commensurate with the

Complaint

demand for the contents of those discs, which revenue would have been received but for Defendants' acts in creating or acquiring counterfeits of SOUND CHOICE-branded accompaniment tracks.

138. As such, Phoenix has been damaged and is likely to be further damaged by a deceptive trade practice of Defendants within the meaning of California Bus. & Prof. Code §17200, et seq.   Unless enjoined by the Court, Defendants' unfair competition activities as described above will continue unabated and will continue to cause harm to Phoenix.

## FOURTH CLAIM FOR RELIEF
## COMMON LAW UNFAIR COMPETITION
## AGAINST ALL DEFENDANTS

139. Phoenix repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

140. Defendants used and knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks in connection with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks, and by displaying the reproduction, counterfeit, or copy of the Sound Choice Marks during the provision of those services.

141. Defendants' use of the Sound Choice Marks was "in commerce" within the meaning ascribed by California common law.

142. Phoenix did not license Defendants to make, acquire, or use reproductions, counterfeits, or copies, or to use the Sound Choice Marks in connection with the services provided to its commercial establishments.

143. Use of the Sound Choice Marks in the manner attributable to Defendants is likely to cause confusion, or to cause mistake, or to deceive customers at Defendants' venues into believing that the services those customers are receiving

**Complaint**

are being provided with the authorization of Phoenix using bona fide, legitimate, authorized karaoke accompaniment tracks.

144. Defendants' acts were willful and knowing.

145. Phoenix has been damaged by infringing activities of Defendants.

146. Unless enjoined by the Court, Defendants' infringing activities as described above will continue unabated and will continue to cause harm to Phoenix.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Phoenix prays for judgment against each of the Defendants severally, and requests that the Court:

A.      Find that each Defendant has committed acts of infringement, including but not limited to counterfeiting, of the federally registered Sound Choice Marks in violation of 15 U.S.C. § 1114(1);

B.      Find that each Defendant engaged in unfair competition detrimental to Phoenix in violation of 15 U.S.C. § 1125(a);

C.      Enter judgment against each Defendant in favor of Phoenix on all applicable counts;

D.      Award to Phoenix each Defendants' profits and the damages sustained by Phoenix because of that Defendant's conduct in infringing the Sound Choice Marks, or, in the alternative, statutory damages per trademark infringed by counterfeiting, and in any event in an amount not less than $50,000 per Defendant;

E.      Award to Phoenix each Defendant's profits and the damages sustained by Phoenix because of that Defendant's acts of unfair competition under 15 U.S.C. § 1125(a);

F.      Award to Phoenix treble, punitive, or otherwise enhanced damages, as available, upon a finding that any Defendant acted willfully in the conduct of its infringement;

G.      Order all computer disks, drives, or other media belonging to each Defendant, which media contain counterfeits of Phoenix's marks, to be delivered up or seized for destruction;

H.      Grant Phoenix preliminary and permanent injunctive relief against further infringement of the Sound Choice Marks and further false designations of origin, by each Defendant, specifically including injunctive relief against the making, copying, sharing, selling, or otherwise using digitized copies of karaoke accompaniment tracks, commercially or otherwise, which tracks are marked with any mark or other designation belong to any person from whom the Defendant has not obtained written authorization from the owner thereof to make, copy, share, sell, or otherwise use the digitized copy;

I.      Award Phoenix its costs, suit and attorney's fees, to the extent not awarded above; and

J.      Grant Phoenix such other and further relief as justice may require.

DATED: October 6, 2016              LAW OFFICES OF LARRY ZERNER

                                    By: /Larry Zerner/_____
                                         Larry Zerner
                                         Attorney for Plaintiff
                                         Phoenix Entertainment Partners, LLC.

Complaint

## DEMAND FOR TRIAL BY JURY

Plaintiff Phoenix Entertainment Partners, LLC pursuant to Rule 38 of the Federal Rules of Civil Procedure hereby demands trial by jury of all issues so triable in the present action.

DATED: October 6, 2016                    LAW OFFICES OF LARRY ZERNER


By: /Larry Zerner/_____
      Larry Zerner
      Attorney for Plaintiff
      Phoenix Entertainment Partners, LLC

Complaint

## ANNEX A

## FEDERAL TRADEMARK REGISTRATIONS

**Reg. No.     Mark                                              Reg. Date**
**Goods/Services**

1,923,448     SOUND CHOICE                                October 3, 1995
Pre-recorded … compact discs containing musical compositions and compact discs
containing video related to musical compositions
*Renewed December 7, 2004, and August 18, 2015*

2,000,725     SOUND CHOICE & Design (see below)     September 17, 1996
Pre-recorded … compact discs containing musical compositions and compact discs
containing video related to musical compositions
*Renewed November 29, 2006, and April 5, 2016*

4,099,045     SOUND CHOICE                                February 14, 2012
Conducting entertainment exhibitions in the nature of karaoke shows

4,099,052     SOUND CHOICE & Design (see below)     February 14, 2012
Conducting entertainment exhibitions in the nature of karaoke shows

"SOUND CHOICE & Design" refers to the following display mark:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>ANNEX B</u>

## STATE TRADEMARK REGISTRATIONS

**Reg. No.     Mark                                    Reg. Date**
**Goods/Services**

115195  SOUND CHOICE & Design (see below)          August 8, 2013

Compact Disc plus graphics (CD+G); karaoke/DVD multi-format player in class 9.


68690   SOUND CHOICE & Design (see below)          August 8, 2013

Compact Disc plus graphics (CD+G); karaoke/DVD multi-format player in class 41.


"SOUND CHOICE & Design" refers to the following display mark:

